IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| TAVARES LASHAWN DATES, #222958, | ) |
| Plaintiff, | ) |
| v. | ) CASE NO. 2:17-CV-537-WC |
| | ) (WO) |
| DR. WILSON, et al., | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

**I. INTRODUCTION**[1]

This 42 U.S.C. § 1983 action is pending before the court on a complaint filed by Tavares Lashawn Dates on August 17, 2017 against Dr. Walter Wilson, the medical director at St. Clair Correctional Facility, Nurse Sharon Arrington — now Sharon Arrington Myatt — a Licensed Practical Nurse, and Corizon Health, the contract medical care provider for the state prison system at the time the challenged actions occurred. In his complaint, Dates alleges that while incarcerated at the Draper Correctional Facility in mid-2017 the defendants acted with deliberate indifference to pain and swelling in his right leg.[2] The defendants filed a special report and supporting evidentiary materials addressing the claims presented in the complaint. In these filings, the defendants deny they acted with

---

[1] All documents and attendant page numbers cited herein are those assigned by the Clerk of this court in the docketing process.

[2] Inmates confined at Draper received medical treatment in the health care unit located in Staton Correctional Facility. Staton is directly adjacent to Draper.

deliberate indifference to Dates' medical condition and, instead, maintain that Dates received appropriate treatment from prison medical personnel. Doc. 35-3 at 2–16. The defendants further assert that the complaint is due to be dismissed because Dates failed to exhaust an administrative remedy available to him through Corizon prior to filing this case. Doc. 34-5 at 6–7 & Doc. 38-1 at 3–4. The defendants base their exhaustion defense on Dates' failure to file a grievance addressing the claim presented in this case.

Upon receipt of the defendants' special report and supplemental exhibit, the court issued an order providing Dates an opportunity to file a response to the defendants' report. Doc. 39. In this order, the court directed Dates to address the following arguments set forth by the defendants:

> 1. His claims are due to be dismissed because he failed to exhaust his available administrative remedies as required by 42 U.S.C. § 1997e(a) of the Prison Litigation Reform Act ("PLRA")[.] . . .
> 2. He is entitled to no relief on the claims presented herein as he has failed to establish that the challenged actions violated his constitutional rights.

Doc. 39 at 1–2. The order also advised Dates that his response should be supported by affidavits or statements made under penalty of perjury and/or other appropriate evidentiary materials. Doc. 39 at 2. In addition, the order cautioned Dates that unless "<u>sufficient legal cause</u>" is shown within fifteen days of entry of this order "why such action should not be undertaken, the court may at any time [after expiration of the time for his filing a response] and <u>without further notice to the parties</u> (1) treat the special report and any supporting evidentiary materials as a motion to dismiss and/or motion for summary judgment, and (2)

after considering any response as allowed by this order, rule on the motion . . . in accordance with the law." Doc. 39 at 4 (footnote omitted).

The time provided Dates to file a response in compliance with the directives of the aforementioned order expired on June 7, 2018. As of the present date, Dates has filed no response in opposition to the defendants' special report.

Based on the foregoing, the court deems it appropriate to treat the report filed by the defendants as a motion to dismiss with respect to the exhaustion defense. Thus, this case is now pending on the defendants' motion to dismiss. *Bryant v. Rich*, 530 F.3d 1368, 1374–75 (11th Cir. 2008) (internal quotations omitted) ("[A]n exhaustion defense . . . is not ordinarily the proper subject for a summary judgment [motion]; instead, it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment."); *Trias v. Florida Dept. of Corrections*, 587 F. App'x 531, 534 (11th Cir. 2014) (holding that the district court properly construed Defendant's "motion for summary judgment as a motion to dismiss for failure to exhaust administrative remedies[.]").

## II. STANDARD OF REVIEW

In addressing the requirements of 42 U.S.C. § 1997e with respect to exhaustion, the Eleventh Circuit has

> recognized that "[t]he plain language of th[is] statute makes exhaustion a precondition to filing an action in federal court." *Higginbottom v. Carter*, 223 F.3d 1259, 1261 (11th Cir. 2000) (per curiam) (quoting *Freeman v. Francis*, 196 F.3d 641, 643-44 (6th Cir. 1999)). This means that "until such administrative remedies as are available are exhausted," a prisoner is precluded from filing suit in federal court. *See id.* (affirming dismissal of prisoner's civil rights suit for failure to satisfy the mandatory exhaustion

3

> requirements of the PLRA); *Harris v. Garner*, 190 F.3d 1279, 1286 (11th Cir. 1999) ("reaffirm[ing] that section 1997e(a) imposes a mandatory requirement on prisoners seeking judicial relief to exhaust their administrative remedies" before ***filing*** suit in federal court), *modified on other grounds*, 216 F.3d 970 (11th Cir. 2000) (en banc); *Miller v. Tanner*, 196 F.3d 1190, 1193 (11th Cir. 1999) (holding that under the PLRA's amendments to § 1997e(a), "[a]n inmate incarcerated in a state prison . . . must first comply with the grievance procedures established by the state department of corrections before filing a federal lawsuit under section 1983."); *Harper v. Jenkin*, 179 F.3d 1311, 1312 (11th Cir. 1999) (per curiam) (affirming dismissal of prisoner's civil suit for failure to satisfy the mandatory exhaustion requirements of § 1997e(a)); *Alexander v. Hawk*, 159 F.3d 1321, 1328 (11th Cir. 1998) (affirming dismissal of prisoner's *Bivens* action under § 1997e(a) for failure to exhaust administrative remedies prior to filing suit in federal court).

*Leal v. Georgia Dept. of Corrections*, 254 F.3d 1276, 1279 (11th Cir. 2001) (emphasis in original). Furthermore, the law is well-settled that "the question of exhaustion under the PLRA [is] a 'threshold matter' that [federal courts must] address before considering the merits of the case. *Chandler v. Crosby*, 379 F.3d 1278, 1286 (11th Cir. 2004). Because exhaustion is mandated by the statute, [a federal court has] no discretion to waive this requirement. *Alexander v. Hawk*, 159 F.3d 1321, 1325-26 (11th Cir. 1998)." *Myles v. Miami-Dade County Correctional and Rehabilitation Dept.*, 476 F. App'x 364, 366 (11th Cir. 2012). The court will therefore "resolve this issue first." *Id*.

"When deciding whether a prisoner has exhausted his remedies, the court should first consider the plaintiff's and the defendant['s] versions of the facts, and if they conflict, take the plaintiff's version of the facts as true. 'If in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed.' *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008) (citing *Bryant,* 530

4

F.3d at 1373-74). If the complaint is not subject to dismissal at this step, then the court should make 'specific findings in order to resolve the disputed factual issues related to exhaustion.' *Id.* (citing *Bryant*, 530 F.3d at 1373-74, 1376)." *Myles*, 476 F. App'x at 366. Consequently, a district court "may resolve disputed factual issues where necessary to the disposition of a motion to dismiss for failure to exhaust [without a hearing]. *See* [*Turne*r, 541 F.3d at 1082]. The judge properly may consider facts outside of the pleadings to resolve a factual dispute as to exhaustion where doing so does not decide the merits, and the parties have a sufficient opportunity to develop the record. *Bryant*, 530 F.3d at 1376." *Trias*, 587 F. App'x at 535. Based on the foregoing, the Eleventh Circuit specifically rejected the argument that "disputed facts as to exhaustion should be decided by a jury." *Id*.

Upon review of the complaint, the defendants' special report and the undisputed evidentiary materials filed in support thereof, the court finds that the defendants' motion to dismiss is due to be granted.

### III. DISCUSSION

Dates challenges the constitutionality of medical treatment he received for pain and swelling in his right leg during his incarceration at the Draper Correctional Facility. In response to the complaint, the defendants deny any violation of Dates' constitutional rights and further argue that this case is subject to dismissal because Dates failed to properly exhaust the administrative remedy provided by Corizon prior to filing this complaint as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a).

The PLRA compels proper exhaustion of available administrative remedies before a prisoner can seek relief in federal court on a § 1983 complaint. Specifically, 42 U.S.C. § 1997e(a) states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." "Congress has provided in § 1997(e)(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative remedies." *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). "The PLRA strengthened [the exhaustion] provision [applicable to inmate complaints] in several ways. Exhaustion is no longer left to the discretion of the district court, but is mandatory. Prisoners must now exhaust all 'available' remedies, not just those that meet federal standards. Indeed, as [the Supreme Court] held in *Booth*, a prisoner must now exhaust administrative remedies even where the relief sought–monetary damages–cannot be granted by the administrative remedies." *Woodford v. Ngo*, 548 U.S. 81, 85 (2006) (internal citation omitted).

Exhaustion of all available administrative remedies is a precondition to litigation and a federal court cannot waive the exhaustion requirement. *Booth*, 532 U.S. at 741; *Alexander*, 159 F.3d at 1325. "[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion." *Ross v. Blake*, --- U.S. ---

, ---, 136 S.Ct. 1850, 1857 (2016). However, "[a] prisoner need not exhaust remedies if they are not 'available.'" *Id*. at 1855. Generally, a remedy is "available" when it has "'sufficient power or force to achieve an end,' [or is] 'capable of use for the accomplishment of a purpose[.]'" *Booth*, 532 U.S. at 737. Moreover, "the PLRA exhaustion requirement requires proper exhaustion." *Woodford*, 548 U.S. at 93. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules [as a precondition to filing suit in federal court] because no adjudicative system can function effectively without imposing some orderly structure on the courts of its proceedings. . . . Construing § 1997e(a) to require proper exhaustion . . . fits with the general scheme of the PLRA, whereas [a contrary] interpretation [allowing an inmate to bring suit in federal court once administrative remedies are no longer available] would turn that provision into a largely useless appendage." 548 U.S. at 90–91, 93. The Supreme Court reasoned that because proper exhaustion of administrative remedies is necessary an inmate cannot "satisfy the Prison Litigation Reform Act's exhaustion requirement . . . by filing an untimely or otherwise procedurally defective administrative grievance or appeal[,]" or by effectively bypassing the administrative process simply by waiting until the grievance procedure is no longer available to him. 548 U.S. at 83-84; *Bryant*, 530 F3d at 1378 (To exhaust administrative remedies in accordance with the PLRA, prisoners must "properly take each step within the administrative process."); *Johnson v. Meadows*, 418 F.3d 1152, 1157 (11th Cir. 2005) (holding that inmate who files an untimely grievance or simply spurns the administrative process until it is no longer available fails to satisfy the

exhaustion requirement of the PLRA); *Higginbottom*, 223 F.3d at 1261 (holding that inmate's belief that administrative procedures are futile or needless does not excuse the exhaustion requirement). "The only facts pertinent to determining whether a prisoner has satisfied the PLRA's exhaustion requirement are those that existed when he filed his original complaint." *Smith v. Terry*, 491 F. App'x 81, 83 (11th Cir. 2012).

It is undisputed that Corizon provides an administrative remedy for inmate complaints regarding medical treatment in the form of an inmate grievance procedure. Doc. 38-1 at 6. In addition, the undisputed evidentiary materials filed by the defendants demonstrate that Dates had access to the grievance procedure at all relevant times — i.e., the procedure was available to him throughout his incarceration at Draper — but he "***never submitted any Medical Grievance or Medical Grievance Appeals regarding any issues whatsover***." Doc. 35-4 at 6–7 (emphasis in original). Darryl Ellis, the Director of Nursing for Staton Correctional Facility during the time relevant to the complaint, explains the applicable grievance procedure and relevant facts as follows:

> Both as of June of 2017 and the current date, the initial orientation process within the ADOC correctional system included educating inmates as to the availability of the grievance process. This Declaration details the grievance procedure utilized by Corizon in June of 2017, but the grievance procedure in place as of the current date follows the same process. With respect to the grievance procedure utilized by Corizon in June of 2017, an inmate initiated the grievance process by submitting a Medical Grievance form to the HSA [Health Services Administrator], the DON [Director of Nursing], or the HSA's designee through the institutional mail system. After reviewing the Medical Grievance, the HSA or the DON would provide a written response within approximately ten (10) days of receipt of the Medical Grievance. The written response to a Medical Grievance was included on

> the bottom portion of the same form containing an inmate's Medical Grievance.
>
> As stated in the Medical Grievance form, the second step of the grievance process involved the submission of a Medical Grievance Appeal. The Medical Grievance form included instructions to the inmates on how to submit a Medical Grievance Appeal. After completing a Medical Grievance Appeal, an inmate could provide it to the HSA, place it in the box for sick call request forms, or give it to the nurse conducting rounds in segregation. Following submission of the Medical Grievance Appeal, the inmate might be brought in for one-on-one communication with a provider on the medical staff, the HSA, and/or the DON. A written response to a formal Medical Grievance Appeal was provided within approximately ten (10) days of receipt. Medical Grievance and Grievance Appeal forms were available from the Health Care Unit and the correctional shift commander offices at the ADOC facilities. Inmates were instructed to place completed Medical Grievance and Medical Grievance Appeal forms in the sick call boxes located outside the building near the shift office and the pill call room at [Draper]. They were located across the hall from the shift office at Draper. The HSA or the DON reviewed the grievances daily, provided a written response within approximately ten (10) days at the bottom of the form and returned a copy of the completed forms to the inmate.

Doc. 38-1 at 3–4 (paragraph numbering omitted).

The record before the court demonstrates that an administrative remedy was available to Dates during his confinement at Draper via Corizon's grievance procedure — a remedy which remains available to him. It is undisputed that, despite the availability of this remedy, Dates did not file a grievance with respect to the claim presented to this court as permitted by the grievance procedure ***prior*** to filing this cause of action. Dates therefore failed to properly exhaust an administrative remedy available to him during his incarceration at Draper before seeking federal relief — a precondition to proceeding in this court on his claims. Consequently, the defendants' motion to dismiss is due to be granted to the extent they seek dismissal of this case based on Dates' failure to properly exhaust an

available administrative remedy prior to initiating this action and this case is subject to dismissal without prejudice in accordance with the provisions of 42 U.S.C. § 1997e(a) for such failure.

A separate Final Judgment will accompany this memorandum opinion.

DONE this 18th day of June, 2018.

                                /s/     Wallace Capel, Jr.
                          CHIEF UNITED STATES MAGISTRATE JUDGE